**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| SOUTHEASTERN MOTOR FREIGHT, INC. | § | CIVIL ACTION NO. _____ |
| Plaintiff | § | |
| | § | |
| VERSUS | § | JUDGE: |
| | § | |
| DANNY PATRICK KEATING, JR. DAMIAN K. LABEAUD and MARIO SOLOMON | § | MAGISTRATE: |
| Defendants | | |

### PLAINTIFF'S ORIGINAL COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Southeastern Motor Freight, Inc. ("Southeastern"), a Louisiana company organized and existing under the laws of the State of Louisiana, with its principal place of business in the Eastern District of the State of Louisiana, which alleges and avers as follows:

### I. PARTIES

1.

Made "Defendants" herein are:

A.   Danny Patrick Keating, Jr. an individual of the full age of majority domiciled in the State of Louisiana, who at all relevant times was an attorney at the Nugent Keating law firm.

B.   Damian K. Labeaud, an individual of the full age of majority domiciled in the State of Louisiana.

C.   Mario Solomon, an individual of the full age of majority domiciled in the State of Louisiana.

- 1 -

## II. JURISDICTION AND VENUE

2.

Pursuant to Title 28, United States Code, Section 1331, this Court has subject matter jurisdiction over the claims alleged in Counts One and Two because such claims arise under the laws of the United States, specifically Title 18, United States Code, Sections 1962(c) and (d) and 1964.

3.

Pursuant to Title 28, United States Code, Section 1367, this Court has subject matter jurisdiction over the state fraud, conspiracy, and racketeering claims alleged in Counts Three through Ten, because they are so related to the RICO claims they form part of the same case or controversy.

4.

Venue is proper in the Eastern District of Louisiana pursuant to Title 28, United States Code, Section 1391(a) and (c) in that a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District. Venue is also proper pursuant to Title 18, United States Code, Section 1965.

## III. STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

**A.    General Background:**

5.

D. Patrick Keating ("Mr. Keating") and Simone R. Nugent ("Ms. Nugent") are attorneys licensed to practice law in the State of Louisiana, who, at all times at issue herein, were the attorneys of record for all Plaintiffs in the underlying litigation in the United States Eastern District of Louisiana in the matter entitled *Judy Williams, et al, versus IQS Insurance et al*, Civil Action

- 2 -

No. 18-2472, arising out of an "accident" which occurred on July 6, 2017 ("the Judy Williams lawsuit"), and were the attorneys of record for all Plaintiffs in the underlying litigation entitled *Larry Williams, Genetta Isreal and Anita Scott v. Michael Smith, Southeastern Motor Freight, Inc., and Hudson Insurance Company*, Suit No. 2018-5803, Div. L-6, Civil District Court for the Parish of Orleans, State of Louisiana, arising out of an "accident" which occurred on July 12, 2017 ("the Larry Williams lawsuit").

6.

Plaintiff, Southeastern Motor Freight, Inc. ("Southeastern"), was the employer of tractor trailer driver, Michael Smith, and named insured of Hudson Insurance Company. It was a named Defendant in "the Larry Williams lawsuit". Pursuant to the insurance contract, Southeastern had a substantial SIR deductible and paid for all attorney's fees, costs and expenses relating to the defense of all Defendants in "the Larry Williams lawsuit".

**B.    "The Larry Williams lawsuit" arising out of the June 12, 2017, "accident":**

7.

The alleged subject accident occurred at or around 11:30 a.m. on June 12, 2017, between the Danziger bridge and the intersection of Chef Menteur Highway and Downman Road in New Orleans.  The accident involved a 2005 Chevy Trailblazer which was operated by Plaintiff, Larry Williams, in which the other Plaintiffs, Genetta Isreal and Anitta Scott, were guest passengers. A Petition for Damages was filed by attorneys, Keating and Nugent of the Keating Nugent law firm, on behalf of all Plaintiffs, naming as Defendants, Michael Smith, Southeastern Motor Freight, Inc., and Hudson Insurance Company. Plaintiffs alleged in their Petition for Damages that Defendant, Michael Smith, was in the course and scope of his employment with Southeastern Motor Freight, Inc., and insured by Hudson Insurance Company, while operating a tractor trailer eastbound on

- 3 -

Chef Menteur Highway. Plaintiffs alleged that Mr. Smith was traveling in the center westbound lane of Chef Hwy, and that he changed lanes and sideswiped Plaintiffs' vehicle traveling in the right westbound lane of Chef Hwy. Plaintiffs alleged that Mr. Smith was negligent and the sole cause of the accident at issue, and alleged numerous damages in discovery including property damage and bodily injury. Larry Williams alleged injuries to his back, left shoulder and right knee, along with medical expenses of at least $92,939.00, which includes a shoulder surgery. Anita Scott alleged injuries to her back and right shoulder, along with medical expenses of at least $11,433.00. Genetta Isreal alleged damages to her back and right leg, along with medical expenses of at least $6,755.00.

8.

Defendants obtained the dash cam video from the tractor trailer and surveillance video from the adjacent Ibrahim Tire Store which showed the accident at issue. These videos show the moments before, during and after the accident at issue. At this general location and prior to the intersection, Chef Hwy has three westbound lanes and goes over the Danziger bridge approaching the intersection. As shown on the videos, immediately prior to the accident Mr. Smith was operating his tractor trailer and entered Chef Hwy on the Danziger bridge in the far right westbound lane. As he reached the top of the bridge, two vehicles can be seen in front of him stopped in the right lane of the bridge - - a Chevy pickup with its hazard lights on, and Plaintiffs' Chevy Trailblazer stopped in front of the pickup. There were no other vehicles stopped in front of these vehicles and no traffic to explain why they were stopped on the bridge. Mr. Smith changed lanes into the center lane to go around the two stopped vehicles, with the intent of taking a right at the next intersection at Downman to get onto I-10. As Mr. Smith was passing by the two stopped vehicles, Plaintiff began to move his trailblazer forward. The video from the business shows that

- 4 -

Mr. Smith then passed the vehicles and changed lanes back into the right lane as he approached the Downman intersection. The light at the intersection then turned red, and Mr. Smith brought his tractor trailer to a stop at the intersection. At that time, Plaintiffs' Trailblazer came from behind, swerved to the right, and rear ended the trailer, and then continued contact with the passenger side of the trailer down the driver's side of the Trailblazer, damaging the driver's side fender well and side view mirror of the Trailblazer.

9.

The videos show that immediately after the impact, the Chevy pickup, pulls next to the tractor trailer and the driver of the pickup speaks with Mr. Smith. The driver of the Chevy pickup alleges to Mr. Smith that he struck Plaintiffs' vehicle. An argument ensues, and the Chevy pickup leaves the scene. Through investigation, it was discovered that the owner of the Chevy pickup is Mario Salomon, who's cell phone number is 504-518-1105. It was further discovered that Damian Labeaud, who had two cell phone numbers at the time of the incident (504-518-9990 and 504-723-6443), was also present at the accident scene.

10.

The depositions of all Plaintiffs were taken on December 20, 2018. All three Plaintiffs consistently testified that their Trailblazer did not rear end the tractor-trailer. Rather, all three testified that their Trailblazer was never stopped on the Danziger bridge in front of a Chevy pickup, nor was it ever stopped at all on the Danziger bridge. Rather, all Plaintiffs testified that their Trailblazer was moving forward in the right hand lane toward the intersection of Downman, when the tractor trailer changed from the center lane into their right hand lane and side swiped the driver's side of their Trailblazer, thereby causing the accident and their injuries. Attorney, Simone Nugent, represented all Plaintiffs in their depositions.

- 5 -

11.

Plaintiff, Larry Williams, testified that his cell phone number was 504-240-8280, and defendants obtained a copy of his cell phone records. Mr. Williams testified that he was the driver the Trailblazer and denied any knowledge of the Chevy pickup behind his Trailblazer before the accident, which has recently been discovered to have been operated by Damian LaBeaud and/or Mario Solomon. Furthermore, the cell phone records show that Mr. Williams and Mr. LaBeaud had communicated by cell phone on numerous occasions, both before and the accident at issue of June 12, 2017. Just in the months of May and June, 2017, calls were made on May 12th, 13th, 14th and 19th, 2017, and June 2nd, 12th, 15th, 16th, 18th, 20th, 21st, 22nd, 24th, 25th, 27th, 28th and 30th, 2017.

12.

Regarding the date of the accident at issue on June 12, 2017, the records indicate that Mr. Labeaud used his cell phone number 504-518-9990, and called Mr. Williams on his cell phone at 11:37 a.m. CST (16:37 UTC), i.e., less than 10 minutes after the impact.

13.

Moreover, the records from Mr. Labeaud's other cell phone (504-723-6443), indicate that he communicated with attorneys shortly before and after the accident. The records indicate that Mr. Labeaud called attorneys at 11:21 a.m. and 11:25 a.m., approximately 9 and 5 minutes prior to the accident. Following the accident at 11:30 a.m., Mr. Labeaud again called attorneys at 12:03 p.m., 12:06 p.m., 1:00 p.m., 1:01 p.m., 1:03 p.m., and 1:04 p.m.

14.

A nearly identical staged accident occurred on June 6, 2017, a week before the Larry Williams accident, at the same location. This accident and bodily injury claims is currently in litigation in the United States Eastern District of Louisiana in the matter entitled *Judy Williams, et*

1943417.v2

*al, versus IQS Insurance et al*, Civil Action No. 18-2472. The Defendants in that litigation filed an Amended Answer alleging fraud.  The "accident" a week earlier also involved Damian Labeaud operating the same Chevy pick-up, and informing the tractor-trailer driver that he allegedly struck a vehicle operated by Plaintiff, Mary Wade, with several guest passengers. Furthermore, attorneys Ms. Nugent and Mr. Keating represented all Plaintiffs in the lawsuit arising out of the "accident" a week earlier on June 6, 2017.

15.

Investigation revealed that Mr. Labeaud has filed five (5) personal injury lawsuits as a plaintiff during the past eight (8) years, all of which involve similar sideswipe automobile accidents at or near the location of the alleged subject accident in the instant lawsuit.[1]  Additionally, Mr. Labeaud's relatives and/or associates have filed other lawsuits as plaintiffs involving accidents with strikingly similar factual scenarios as the subject accident alleged in this case.[2]

## C.  Subsequent Federal Indictments arising out of "the Larry Williams lawsuit" and "the Judy Williams lawsuit":

16.

On or about October 24, 2019, and December 5, 2019, the U.S. Attorney's Office for the Eastern District of Louisiana issued indictments in the alleged fraud scheme involving staged accidents in "the Larry Williams lawsuit" and the "Judy Williams lawsuit" (hereinafter referred to as "the indictment"). The criminal matter regarding these staged accidents is entitled *United States*

---

[1] *See Damian LaBeaud v. American International Group, Inc. et al.*, CDC Docket #10-11083; *Damian LaBeaud v. Great West Casualty Company, et al.;* CDC Docket #12-6987 (removed to EDLA, Docket #12-02044); *Damian LaBeaud v. Allstate Fire and Casualty Ins. Co.*; CDC Docket #18-5963; *Damian LaBeaud v. Hallmark Specialty Insurance Company, et al.*; CDC Docket #16-7003; *Damian LaBeaud v. The Hertz Corporation;* CDC Docket #15-11372 (removed to EDLA 16-00322).

[2] *Damian LaBeaud v. Marten Transport, LTD, et al.*; CDC Docket #16-3758 (NOTE: Damian LaBeaud in that case is Damian LaBeaud's Daughter); *Michael Dumas and Kim Dumas v. AIG Insurance Company, et al*; CDC Docket #17-8113 (Michael Dumas and Kim Dumas are Damian LaBeaud's uncle and aunt); *Sabrina Randolph v. Great West Casualty Co*; CDC Docket #17-4303 (Sabrina Randolph is known to be Damian LaBeaud's girlfriend); *Sabrina Randolph v. Energi In. Services et al.*; CDC Docket #16-4982; *Angel Mathieu v. Scottsdale Insurance Company et al*; CDC Docket #08-3000 (Angel Mathieu is known to be Damian LaBeaud's girlfriend).

1943417.v2

*of America v. Damian Labeaud, Lucinda Thomas, Mary Wade, Judy Williams, Dashontae Young, Genetta Isreal, Mario Solomon and Larry Williams*, Criminal No. 19-219, Section L, United States District Court, Eastern District of Louisiana. The indicted Plaintiffs/vehicle occupants in the "Judy Williams lawsuit" arising out of the "accident" of June 6, 2017, were Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young for their involvement in staging the June 6, 2017, accident at issue. The indicted Plaintiffs/vehicle occupants in the "Larry Williams lawsuit" arising out of the "accident" of June 12, 2017, were Larry Williams and Genetta Isreal (Plaintiff, Anita Scott, died prior to the indictments being issued) for their involvement in staging the June 12, 2017, accident at issue. Additionally, Mario Solomon and Damian Labeaud were indicted for their involvement in recruiting, coordinating and staging both accidents of June 6, 2017, and June 12, 2017.

17.

Within the indictment, references were made to "Attorney A," believed to be Mr. Keating, and also to "Attorney B," believed to be Ms. Nugent. The indictment alleged that "Attorney A" met with Mr. Labeaud prior to both staged accidents and agreed that "Attorney A" would pay Mr. Labeaud $1,000.00 per passenger for each staged accident involving tractor-trailers (and $500.00 per passenger for staged accidents involving non-tractor-trailers). Moreover, it was alleged that "Attorney A" knew that Mr. Labeaud was staging accidents, and that "Attorney A" paid Mr. Labeaud for at least forty (40) illegally staged automobile accidents.

18.

Regarding "the Larry Williams lawsuit" and staged accident of June 12, 2017, the indictment alleges that Mr. Labeaud, Mr. Solomon, Mr. Williams and Ms. Isreal were all charged with staging an accident on June 12, 2017, that occurred on Chef Mentuer Highway near the

- 8 -

Danziger Bridge in New Orleans. According to the indictment, Mr. Labeaud and Mr. Williams planned to stage an automobile accident to obtain money through fraud. During their planning, Mr. Labeaud told Mr. Williams that he had an attorney who would handle everything. The indictment alleges that Mr. Williams recruited Ms. Isreal and another individual who is now deceased (Ms. Scott), to participate in the fraudulent scheme, that Mr. Williams borrowed a Chevrolet Trailblazer, and that Mr. Labeaud operated the Trailblazer to collide with a 2015 Peterbilt tractor-trailer. After the staged accident, Mr. Labeaud fled the scene and Mr. Williams got behind the wheel to make it appear that he was operating the Trailblazer during the staged accident. Mr. Solomon picked up Mr. Labeaud after the staged accident. Mr. Williams told the NOPD that he was the driver of the Trailblazer and that the tractor-trailer was at fault. After the staged accident, Mr. Labeaud introduced Mr. Williams and Ms. Isreal to "Attorney A".

19.

The indictment further alleged that Mr. Williams and Ms. Isreal were treated by doctors and healthcare providers at the direction of "Attorney A". According to the indictment, "Attorney A" told Mr. Williams that he would get more money if he had shoulder surgery. The indictment further alleges that on June 12, 2018, "Attorney A's" law partner, "Attorney B," filed the Larry Williams lawsuit in the Civil District Court for Orleans Parish, and on September 14, 2018, "Attorney B" demanded approximately $60,000.00 in settlement for the deceased passenger and approximately $56,155.00 in settlement for Ms. Isreal. Furthermore, the indictment alleges that after suit was filed, Mr. Williams and Ms. Isreal each provided false testimony in depositions taken in conjunction with the lawsuit filed by "Attorney B".

20.

Regarding "the Judy Williams lawsuit" and staged accident of June 6, 2017, the indictment

1943417.v2

alleges that Mr. Labeaud, Mr. Solomon, Ms. Thomas, Ms. Wade, Ms. Williams and Ms. Young were all charged with staging an accident on June 6, 2017, that occurred on Chef Mentuer Highway near the Danziger Bridge in New Orleans. According to the indictment, Ms. Thomas, Ms. Wade, Ms. Williams and Ms. Young all drove from Houma, Louisiana, to meet with Mr. Labeaud for the purpose of staging an automobile accident in order to obtain money through fraud. After their meeting, Ms. Thomas, Ms. Wade, Ms. Williams and Ms. Young agreed to allow Mr. Labeaud to drive Ms. Thomas' Chevrolet Avalance. They drove around the vicinity of Chef Menteur Highway until they located a tractor-trailer, which Mr. Labeaud then intentionally collided with. Mr. Labeaud then exited Ms. Thomas' vehicle and instructed Ms. Thomas to get behind the wheel of the vehicle to make it appear that she was driving. The indictment alleges that they then contacted the NOPD and falsely reported that Ms. Thomas had been the driver of the Avalanche and that the tractor-trailer had struck her vehicle. Moreover, Mr. Labeaud returned to the scene and also made false statements to the NOPD that he had witnessed the accident and that the driver of the tractor-trailer had been at fault.

21.

The indictment further alleges before and after the staged accident of June 6, 2017, that Mr. Labeaud contacted "Attorney A" and arranged a meeting with Ms. Thomas, Ms. Wade, Ms. Williams and Ms. Young at a restaurant on Chef Menteur Highway. The indictment alleges that "Attorney A" paid Mr. Labeaud $7,500.00 on the day of the staged accident. According to the indictment, "Attorney A" then demanded approximately $1,000,000.00 per plaintiff in settlement for the claims of Ms. Thomas, Ms. Wade and Ms. Williams. "Attorney A" then filed two lawsuits in the CDC arising out of the June 6, 2017, staged accident, both of which were removed to the U.S. District Court for the Eastern District of Louisiana. The indictment further alleges that Ms.

1943417.v2

Thomas, Ms. Wade and Ms. Williams each provided false testimony in various depositions taken in conjunction with the lawsuits filed by "Attorney A".

22.

The indictment further alleges that "Attorney A" contacted Mr. Labeaud because "Attorney A" was worried about a telephone call made by Ms. Wade to Mr. Labeaud prior to the staged accident, and that "Attorney A" instructed Mr. Labeaud to contact Ms. Thomas and Ms. Wade to instruct them to "get their stories straight". The indictment alleges that during a subsequent meeting, "Attorney A" gave Mr. Labeaud an envelope containing phone records, pleadings, and depositions establishing that Ms. Thomas and Ms. Waid lied under oath in their September 13, 2018, depositions. The indictment alleges that "Attorney A" then met with Ms. Thomas and Ms. Wade at a fast-food restaurant outside of New Orleans where "Attorney A" suggested to Ms. Thomas and Ms. Wade a fraudulent scheme to explain a telephone call from Ms. Wade to Mr. Labeaud prior to the staged accident.

23.

The indictment further alleges that on or about April 9, 2019, Ms. Thomas, Ms. Wade and Ms. Williams each provided false testimony in depositions taken in conjunction with the lawsuits filed by "Attorney A," and that Ms. Thomas, Ms. Wade and Ms. Williams settled their lawsuits arising out of the staged accident for $7,500.00 each.

24.

Pursuant to the indictment, Mr. Labeaud and Mr. Solomon were charged with one (1) count of Conspiracy to Commit Wire Fraud ("Conspiracy Count") in violation of Title 18, United States Code, Section 371, and seven (7) counts of Wire Fraud ("Wire Fraud Counts") in violation of Title 18, United States Code, Section 1343. Ms. Thomas, Ms. Wade, Ms. Williams and Ms. Young were

- 11 -

charged in the Conspiracy Count and six (6) Wire Fraud Counts. Ms. Isreal and Mr. Williams were charged in the Conspiracy Counts and two (2) Wire Fraud Counts.

**D.    Subsequent Guilty Pleas and signed confessions and "Factual Basis" of the Plaintiffs/vehicle occupants in the staged accidents to the Federal Indictments against them for conspiracy to commit wire fraud arising out of "the Larry Williams lawsuit" and "the Judy Williams lawsuit":**

25.

On or about January 30, 2020, guilty pleas were entered by five of the six indicted Plaintiffs in "the Larry Williams lawsuit" arising out of the June 12, 2017, staged accident, and the Plaintiffs in the "the Judy Williams lawsuit" arising out of the June 6, 2017, staged accident; i.e., Larry Williams, Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young all plead guilty to Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 371, arising out of staged accidents at issue. Each of the five (5) signed extensive confessions as a "Factual Basis" regarding their guilty pleas, which admitted to the facts set forth above regarding the indictments, their respective involvement in staging the accidents of June 6, 2017, and June 12, 2017, along with the conspiracy to commit wire fraud in connection with these staged accidents, and the involvement of the attorneys, Damian Labeaud and Mario Solomon in coordinating the scheme to stage these accidents and commit wire fraud in connection with these staged accidents. The "Factual Basis" and confessions signed on January 30, 2020, by Larry Williams, Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young, are all plead herein as if copied *in extenso*.

26.

In the "Factual Basis" signed by Larry Williams regarding his guilty plea of January 30, 2020, Larry Williams admitted to the following facts in his confession regarding his involvement in the staged accident of June 12, 2017, which targeted the tractor trailer owned by Southeastern

- 12 -

Motor Freight, Inc., and operated by an employee of Southeastern Motor Freight, Inc.:

26(a).

That he, along with his co-conspirators and others, beginning in approximately June, 2017, and continuing through approximately, December, 2018, in the Eastern District of Louisiana, and elsewhere, conspired to commit wire fraud in connection with a staged accident that occurred on June 12, 2017, in which Mr. Williams was a passenger.

26(b).

That, prior to June 12, 2017, Mr. Williams and Mr. Labeaud agreed on a plan in which Mr. Labeaud would intentionally collide with a tractor-trailer with Mr. Williams in the vehicle at the time of the staged accident. That, as part of this agreement, following the staged accident, Mr. Williams would attempt to recover monetary damages from the owner and insurer of the tractor-trailer in connection with purported injuries suffered as a result of the staged accident. That, Mr. Labeaud told Mr. Williams that he had an attorney, "Attorney A," who would handle everything regarding a potential recovery in connection with the staged accident.

26(c).

That, on June 10, 2017, Mr. Williams who had borrowed a Trailblazer, drove with his co-conspirators, Genetta Isreal and Anita Scott, and crossed state lines by traveling from Houston, Texas, to New Orleans, Louisiana, for the purpose of having Mr. Labeaud drive the Trailblazer and stage an accident that Mr. Williams and Mr. Labeaud had previously discussed. That, on June 12, 2017, Mr. Williams, Ms. Isreal and Ms. Scott met Mr. Labeaud in the Trailblazer in New Orleans. That, Mr. Labeaud drove the Trailblazer in the eastbound far right-lane on Chef Menteur Highway waiting to locate a tractor-trailer with which Mr. Labeaud would stage an accident.[3]

---

[3] Prior to travelling to Houston, Texas, Mr. Williams made interstate phone calls to Ms. Scott to facilitate the pick up of Ms. Scott and Ms. Isreal in Texas to bring them to Louisiana for the purpose of intentionally staging the accident.

1943417.v2

26(d).

That, at approximately 11:30 a.m., Mr. Labeaud located and intentionally collided with a 2015 Peterbilt tractor-trailer owned by Southeastern Motor Freight, Inc., which was driving east on Chef Menteur Highway. That, immediately after the accident, Mr. Labeaud exited the Trailblazer and left the scene of the accident. That, Mr. Williams switched into the driver's seat of the Trailblazer to make it appear as though Mr. Williams was driving the vehicle at the time of the accident. That, immediately after the accident on June 12, 2017, Mr. Williams, Ms. Isreal and Ms. Scott contacted the NOPD to report the accident. That, the NOPD arrived on the scene shortly thereafter and that Mr. Williams lied to NOPD officers stating that he had been the driver of the Trailblazer at the time of the accident. That, at no time did Mr. Williams tell the NOPD officers that Mr. Labeaud had been the driver of the Trailblazer at the time of the accident.

26(e).

That, after the accident, Mr. Labeaud contacted "Attorney A" and arranged a meeting at "Attorney A's" office. That, Mr. Labeaud, Mr. Williams, Ms. Isreal and Ms. Scott went to "Attorney A's" office in order to sign the necessary paperwork to retain "Attorney A" to represent Mr. Williams, Ms. Isreal and Ms. Scott in connection with seeking monetary damages from the owner and insurer of the 2015 Peterbilt tractor-trailer in connection with the staged accident that had taken place on June 12, 2017. That, Mr. Williams, Ms. Isreal and Ms. Scott all hired "Attorney A" to represent them.

26(f).

That, on June 12, 2018, "Attorney B," an attorney who worked with "Attorney A," filed a personal injury lawsuit on behalf of Mr. Williams, Ms. Isreal and Ms. Scott against Southeastern Motor Freight, Inc., and its insurers, Hudson Insurance Company and Napa River Insurance

- 14 -

Services in the Civil District Court for Orleans Parish ("the Larry Williams lawsuit"). That, the allegations in "the Larry Williams lawsuit" were false in that they did not contain information about how Labeaud intentionally caused the June 12, 2017, accident with the Peterbilt tractor-trailer. That furthermore, "the Larry Williams lawsuit" falsely alleged that Mr. Williams had been the driver of the Trailblazer during the accident and omitted material information about how Mr. Williams had agreed to stage the accident with Mr. Labeaud. That, on June 27, 2018, an employee of Southeastern Motor Freight, Inc., in Jefferson, Louisiana, sent an email that traveled across state lines to an employee of NAPA in Indianapolis, Indiana that attached "the Larry Williams lawsuit".

26(g).

That, moreover, "Attorney A" told the Defendant that he would get more money through the lawsuit if he had surgery. That, to increase the value of "the Larry Williams lawsuit," at "Attorney A's" direction, Mr. Williams underwent shoulder surgery performed by "Physician B" referred by "Attorney A". That, on September 20, 2018, Mr. Williams was deposed in connection with "the Larry Williams lawsuit". That, Mr. Williams lied during that deposition and omitted key material facts. That, namely, Mr. Williams provided false testimony about the circumstances of the June 12, 2017, accident and covered up the fact that Mr. Labeaud had been the driver of this staged accident. That, during the course of "the Larry Williams lawsuit," "Attorney B" made a settlement demand attempting to resolve the case.

26(h).

That, Mr. Williams conspired to commit wire fraud by causing the filing of "the Larry Williams lawsuit" seeking monetary damages that was premised on falsehoods in connection with the June 12, 2017, staged automobile accident, providing false information during the course of "the Larry Williams lawsuit" in an effort to recover monetary damages against the owner and

1943417.v2

operator of the 2015 Peterbilt tractor-trailer, and causing the use of interstate wire communications to facilitate his recovery with this staged accident.

27.

Southeastern Motor Freight, Inc., shows, alleges and avers herein that the guilty plea and specifically the signed confession and "Factual Basis" of Mr. Williams on or about January 30, 2018, was the first notice to Defendants of any admission that the accident of June 12, 2017, was in fact a staged accident, an admission that a fraudulent scheme existed regarding the staged accident of June 12, 2017, or an admission that "Attorney A" or "Attorney B" were involved in the fraudulent scheme regarding the staged accident of June 12, 2017. Moreover, the more detailed involvement of Defendants herein, "Attorney A"/D. Patrick Keating, Damian Labeaud and Mario Solomon, was unknown to Southeastern Motor Freight, Inc., until the guilty plea and signed confession and "Factual Basis" of Mario Solomon on or about May 28, 2020, and the guilty plea and signed confession and "Factual Basis" of Damian Labeaud on or about August 6, 2020, set forth below.

E.  **Subsequent Guilty Plea and signed confession and "Factual Basis" of Mario Solomon to the Federal Indictment against him for conspiracy to commit wire fraud arising out of "the Larry Williams lawsuit" and "the Judy Williams lawsuit":**

28.

On or about May 28, 2020, a guilty plea was entered by Mario Solomon for Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 371, arising out of his involvement in the staged accident at issue in "the Larry Williams lawsuit" arising out of the June 12, 2017, staged accident, and his involvement in the staged accident at issue in the "the Judy Williams lawsuit" arising out of the June 6, 2017, staged accident.

1943417.v2

29.

The guilty plea of Mr. Solomon was filed into the court records on or about May 29, 2020, along with the "Factual Basis" signed by Mr. Solomon on or about May 21, 2020, supporting his guilty plea, wherein Mr. Solomon admitted to the following facts in his confession regarding the staged accidents of June 6, 2017, and June 12, 2017, along with his involvement in numerous other staged accidents:

i.    **Mr. Solomon's signed confession and "Factual Basis" regarding the background facts of the conspiracy to commit fraud:**

29(a).

That he, along with his co-conspirators and others, conspired to commit wire fraud in connection with staged accidents in the Eastern District of Louisiana and elsewhere, including two that occurred on June 6, 2017, and June 12, 2017. That in or around early 2017, Mr. Solomon traveled with Damian Labeaud to a restaurant where Mr. Labeaud met with "Attorney A" to discuss Mr. Labeaud's involvement with staging accidents with 18-wheeler tractor trailers. That, Mr. Solomon was present at the restaurant for this meeting, but did not sit with Mr. Labeaud and "Attorney A" as they discussed how Mr. Labeaud would stage car accidents with 18-wheeler tractor-trailers.

29(b).

That, as part of that agreement, Mr. Solomon learned that "Attorney A" would pay Mr. Labeaud for his role in being the driver of the vehicle in the staged accidents and that Mr. Labeaud would receive advances from "Attorney A". That, Mr. Labeaud recruited Mr. Solomon to serve as a "spotter". That, as a "spotter," Mr. Solomon would follow Mr. Labeaud in a separate vehicle as Mr. Labeaud prepared to stage accidents with 18-wheeler tractor-trailers. That, after the accidents, Mr. Solomon would pick up Mr. Labeaud after Mr. Labeaud exited the vehicle in which he had

- 17 -

staged an accident. That, in exchange for serving as a "spotter," Mr. Labeaud paid Mr. Solomon. That, Mr. Solomon served as a "spotter" in at least two car accidents that Mr. Labeaud staged with the 18-wheeler tractor-trailers.

### ii.     Mr. Solomon's signed confession and "Factual Basis" regarding the conspiracy to commit fraud in the June 6, 2017, staged accident:

29(c).

That, on June 6, 2017, the day of the staged accident, Mr. Solomon and Mr. Labeaud called one another ten times between 9:13 a.m. and 12:26 p.m. That, during those conversations, Mr. Solomon and Mr. Labeaud discussed the accident that Mr. Labeaud planned to stage that day with Mr. Solomon's assistance. That, prior to the accident, Mr. Labeaud and Mr. Solomon met Lucinda Thomas, Mary Wade, Judy Williams, and Dashontae Young at a restaurant. That, at approximately 12:30 p.m. that day, Mr. Labeaud drove with Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young in Lucinda Thomas's vehicle, a 2009 Chevrolet Avalanche ("the Avalanche") east on Chef Menteur Highway in New Orleans and intentionally collided with a 2017 Freightliner tractor-trailer that was merging onto Chef Menteur Highway. That, Mr. Solomon was following Mr. Labeaud in his silver Chevrolet Silverado pick-up truck.

29(d).

That, immediately after the accident, Mr. Labeaud exited the Avalanche and left the scene of the accident. That, between 12:39 p.m. and 1:29 p.m., Mr. Labeaud and Mr. Solomon called one another seven times. That, during this timeframe, Mr. Solomon picked up Mr. Labeaud in Mr. Solomon's silver Chevrolet Silverado pick-up truck. That, at approximately 1:45 p.m., Mr. Solomon returned to the scene of the staged accident with Mr. Labeaud. That, at that time, Mr. Labeaud made false statements to the NOPD officers who were on the scene stating that the driver of the 2017 Freightliner tractor-trailer had been at fault.

29(e).

That, following the June 6, 2017, Mr. Solomon and Mr. Labeaud met with "Attorney A" and "Attorney A" paid Mr. Labeaud $7,500.00 for staging the June 6, 2017, accident and another accident. That, using the funds that Mr. Labeaud received from "Attorney A," Mr. Labeaud then paid Mr. Solomon for serving as the "spotter". That, following this June 6, 2017, staged accident, Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young all hired "Attorney A" to represent them.

29(f).

That, in representing Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young, "Attorney A" caused interstate wires to be transmitted to recover monetary damages for Lucinda Thomas, Mary Wade, Judy Williams and Deshontae Young in connection with the staged accident. That namely "Attorney A" negotiated a settlement on behalf of Dashontae Young prior to filing a lawsuit. That, on approximately November 27, 2017, "Attorney A" settled Dashontae Young's claim with Covent, the parent company of SRT, which operated the 2017 Freightliner tractor-trailer involved in the June 6, 2017, staged accident. That, in connection with that settlement, after November 27, 2017, "Attorney A" deposited a $20,000.00 settlement check for Dashontae Young that "Attorney A" received for settling her claim. That, in effectuating the settlement, Dashontae Young caused Covenant to issue from its Chase account check number 50047 dated November 17, 2017, in the amount of $20,000.00. That, "Attorney A" then deposited that check into an Iberia account. That, in depositing the check into the Iberia account, "Attorney A" caused an electronic wire communication to be sent from Louisiana to the Federal Reserve in Atlanta, Georgia.

29(g).

That, "Attorney A" also filed lawsuits on behalf of Lucinda Thomas, Mary Wade and Judy

- 19 -

Williams against SRT, Covenant, IQS Insurance Risk Retention Group, Inc. ("IQS") – SRT And Covenant's insurer – seeking to obtain monetary damages in connection with the June 6, 2017, staged accidents. That, on or about April 4, 2019, Mr. Solomon was deposed in connection with the lawsuit that "Attorney A" filed on behalf of Judy Williams and Mary Wade. That, Mr. Solomon was in custody at the time of the deposition as the result of an unrelated narcotics conviction. That, prior to the deposition, "Attorney A" visited with Mr. Solomon and they discussed what Mr. Solomon should say in that deposition regarding the June 6, 2017, staged accident. That, during the deposition, Mr. Solomon lied and stated that he was not driving with Mr. Labeaud on June 6, 2017, following the staged accident, that he did not witness the June 6, 2017, staged accident, and that he did not return to the scene with Mr. Labeaud following the June 6, 2017, staged accident.

### iii.     Mr. Solomon's signed confession and "Factual Basis" regarding the conspiracy to commit fraud in the June 12 2017, staged accident:

29(h).

That, on the date of the staged accident of June 12, 2017, Mr. Solomon and Mr. Labeaud called one another five times between 10:02 a.m. and 11:01 a.m. That, during these conversations, Mr. Solomon and Mr. Labeaud discussed the accident that Mr. Labeaud planned to stage that day. That, at approximately   11:30 a.m., Mr. Labeaud drove a 2005 Chevrolet Trailblazer ("Trailblazer") with Larry Williams, Genetta Isreal and another individual as passengers to the Danziger Bridge and parked the Trailblazer in the far right-lane heading east on Chef Menteur Highway to locate an 18-wheeler tractor-trailer to collide with. That, at around the same time, Mr. Solomon waited in his Chevrolet Silverado pick-up truck on the Danziger Bridge immediately behind the Trailblazer operated by Mr. Labeaud. That, at approximately 11:30 a.m., Mr. Labeaud located and intentionally collided with a 2015 Peterbilt tractor-trailer owned by Southeastern Motor Freight, Inc. driving east on Chef Menteur Highway.

29(i).

That, immediately after the accident, Mr. Labeaud exited the Trailblazer and left the scene. That, at 11:47 a.m., Mr. Labeaud called Mr. Solomon, who then picked up Mr. Labeaud after Mr. Labeaud fled from the Trailblazer on foot. That, following the staged accident on June 12, 2017, Mr. Solomon and Mr. Labeaud spoke on the phone another three times that day.

29(j).

That, ultimately, on June 30, 2017, "Attorney A" paid Mr. Labeaud $5,000.00 for staging the June 12, 2017, accident. That Mr. Labeaud then gave a portion of that $5,000.00 to Mr. Solomon for his assistance with staging the accident.

29(k).

That, on June 12, 2018, "Attorney B," an attorney who worked with "Attorney A," filed a personal injury lawsuit on behalf of Larry Williams, Genetta Isreal and another individual against Southeastern Motor Freight, Inc. and its insurers, Hudson Insurance Company and Napa River Insurance Services ("Napa"), in the Civil District Court for the Parish of Orleans in the State of Louisiana. That, on June 27, 2018, an employee of Southeastern Motor Freight, Inc., in Jefferson, Louisiana, sent an email that traveled across state lines to an employee of Napa in Indianapolis, Indiana that attached the lawsuit. That furthermore, during the course of the lawsuit, "Attorney B" made a settlement demand attempting to resolve the case via email.

29(l).

That Mr. Labeaud paid Mr. Solomon approximately $1,000.00 for serving as a "spotter" in connection with the June 6, 2017, and June 12, 2017, staged accidents.

29(m).

That Mr. Solomon conspired to commit wire fraud by agreeing with Mr. Labeaud and

- 21 -

1943417.v2

others to cause staged accidents with 18-wheeler tractor-trailers and that Mr. Labeaud paid Mr.

Solomon for his role in serving as a "spotter". That furthermore, Mr. Solomon knew that his co-

conspirators – the passengers in these staged accidents and the attorneys representing them – would

seek to obtain monetary damages from the owners and insurers of those 18-wheeler tractor-trailers.

That, Mr. Solomon knew that these accidents were premised on falsehoods because they were

staged. Moreover, Mr. Solomon's co-conspirators caused the use of interstate wire

communications to facilitate their recovery with these staged accidents.

**F.**     **Subsequent Guilty Plea and signed confession and "Factual Basis" of Damian Labeaud to the Federal Indictment against him for conspiracy to commit wire fraud arising out of "the Larry Williams lawsuit" and "the Judy Williams lawsuit":**

30.

On or about August 6, 2020, a guilty plea was entered by Damian Labeaud for Conspiracy

to Commit Wire Fraud, in violation of Title 18, United States Code, Section 371, arising out of his

involvement in the staged accident at issue in "the Larry Williams lawsuit" arising out of the June

12, 2017, staged accident, and his involvement in the staged accident at issue in the "the Judy

Williams lawsuit" arising out of the June 6, 2017, staged accident.

31.

In the "Factual Basis" signed by Mr. Labeaud regarding his guilty plea of August 6, 2020,

Mr. Labeaud admitted to the following facts in his confession regarding the staged accidents of

June 6, 2017, and June 12, 2017, along with his involvement in numerous other staged accidents:

**i.**     **Mr. Labeaud's signed confession and "Factual Basis" regarding the background facts of the conspiracy to commit fraud:**

31(a).

That he, along with his co-conspirators and others, conspired to commit wire fraud in

- 22 -

connection with staged accidents in the Eastern District of Louisiana and elsewhere, including two that occurred on June 6, 2017, and June 12, 2017. That in or around early 2017, Mr. Labeaud met with "Attorney A" at a restaurant to discuss Mr. Labeaud staging accidents for "Attorney A". That Mario Solomon was present during this meeting. That, at this meeting, "Attorney A" told Mr. Labeaud that he wanted Mr. Labeaud to bring him staged accidents. That, consistent with Mr. Labeaud's arrangements with other attorneys, Mr. Labeaud and "Attorney A" agreed that "Attorney A" would pay Mr. Labeaud $1,000.00 per passenger that was involved in a staged accident with an 18-wheeler tractor-trailer and $500.00 per passenger that was in a staged accident that did not involve a tractor-trailer. That, per their agreement, "Attorney A" would either pay Mr. Labeaud in advance, or would pay him for the accidents soon after they were staged. That, "Attorney A" paid Mr. Labeaud in cash or check for staging accidents. That, as part of the scheme, after each staged accident, Mr. Labeaud would connect the passengers with "Attorney A" so that they could complete the necessary paperwork for "Attorney A" to represent them. That, Mr. Labeaud understood that, as part of the scheme, "Attorney A" would instruct the passengers to be treated by certain doctors and healthcare providers, often at an inflated cost, in order to obtain larger settlements.

31(b).

That "Attorney A" knew that Mr. Labeaud was staging the accidents and the two would often discuss the accidents before they happened either in person or over the phone, through calls or text messages. That, in an effort to evade detection, "Attorney A" would, for example, direct Mr. Labeaud to change the locations of the staged accidents, to vary the number of passengers, to avoid talking to the police, and to avoid cameras. That, in order to conceal their activity, Mr. Labeaud and "Attorney A" communicated regarding the staged accidents using coded language.

- 23 -

For example, in text messages, "Attorney A" and Mr. Labeaud would sometimes use fishing terms to refer to the staged accidents. As an example, on May 19, 2017, Mr. Labeaud texted "Attorney A," "I'm going fishing this morning & I was trying to c if you was gd 4 now r u would like somemore of them big bull red's?" "Attorney A" responded, "Good for now. Chat next week." The following week, on May 24, 2017, Mr. Labeaud texted "Attorney A," "Gd morning! Do u want somemore fish 2day 4 lunch bro!!" "Attorney A" responded, "Yes, sire," and Mr. Labeaud confirmed, "…I will have u 4 more 2day ok homie!!" On June 20, 2017, Mr. Labeaud texted "Attorney A," "Say bro we done here! . . . 3 Big red's & 2 lil trout as of now!!" On June 22, 2017, "Attorney A" texted Mr. Labeaud asking, ". . . What do I owe you for?" Mr. Labeaud responded, "3 last week & 2 da other day! So it's 4 all together!!" Later in the day, "Attorney A" texted Mr. Labeaud, "On way. Bout 10 mins. Had to stop n get some bread for the fish."

### 31(c).

That, in some cases, Mr. Labeaud was the driver, or "slammer," of the vehicle in the staged accident, and in other cases he served as the "spotter," or the person driving the getaway vehicle. That, as a slammer, Mr. Labeaud would exit the vehicle in which he staged the accident immediately after causing the collision and flee the scene. That, the most common method Mr. Labeaud used in order to stage accidents with tractor-trailers, was to wait until the tractor-trailer was about to make a turn or change lanes, and then speed up in order to cause a collision on the blind side of the tractor-trailer driver. That, as a spotter, Mr. Labeaud would follow in a separate vehicle and then pick up the slammer from the scene immediately after the accident. That, Mr. Labeaud recruited several others, including Mario Solomon, to serve as his spotter. That, Mr. Labeaud would pay whoever helped him with staging the accident in either the spotter or slammer role. That, throughout the course of the conspiracy, Mr. Labeaud utilized several different spotter

- 24 -

vehicles. That, the scheme also included a number of intermediaries who recruited passengers to participate in the staged accidents. That, according to Mr. Labeaud, he staged numerous accidents for various attorneys, including at least forty (40) staged accidents with tractor-trailers for "Attorney A". That, two (2) of the accidents that Mr. Labeaud staged are described by him below:

## ii.     Mr. Labeaud's signed confession and "Factual Basis" regarding the conspiracy to commit fraud in the June 6, 2017, staged accident:

### 31(d).

That, on June 5, 2017, the day before the staged accident of June 6, 2017, Mr. Labeaud was notified by an intermediary who recruited passengers that they were prepared to meet the following morning to stage an accident. That, Mr. Labeaud called "Attorney A" the day before the accident. That, on the following day, June 6, 2017, Mr. Labeaud and Mario Solomon spoke with each other several times in order to discuss the accident that Mr. Labeaud planned to stage that day with Mr. Solomon's assistance as the spotter. That, prior to the accident, Mr. Labeaud and Mr. Solomon met Lucinda Thomas, Mary Wade, Judy Williams, and Dashontae Young at a Burger King restaurant in New Orleans. That, at approximately 10:58 a.m. that morning, Mr. Labeaud called "Attorney A". At approximately 12:30 p.m., Mr. Labeaud drove with Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young in Lucinda Thomas's vehicle, a 2009 Chevrolet Avalanche ("the Avalanche") east on Chef Menteur Highway in New Orleans and intentionally collided with a 2017 Freightliner tractor-trailer that was merging onto Chef Menteur Highway. That, Mario Solomon was following Mr. Labeaud in his silver Chevrolet Silverado pick-up truck.

### 31(e).

That, immediately after the accident, Mr. Labeaud exited the Avalanche and instructed Lucinda Williams to get behind the wheel of the Avalanche to make it appear that she was driving the vehicle at the time of the accident. That, prior to exiting the vehicle, Mr. Labeaud instructed

1943417.v2

the passengers to tell the police that the tractor-trailer was at fault. That, Mr. Labeaud then left the scene of the accident. That, between 12:39 p.m. and 1:29 p.m., Mr. Labeaud and Mr. Solomon called each other several times to coordinate Mr. Solomon picking up Mr. Labeaud in his silver Chevrolet Silverado pick-up truck. That, at approximately 12:44 p.m., "Attorney A" sent Mr. Labeaud a text message. That, at approximately 1:36 p.m. and 1:43 p.m., Mr. Labeaud called "Attorney A". At approximately 1:45 p.m., Mr. Labeaud returned to the scene of the staged accident with Mr. Solomon. That, at that time, Mr. Labeaud made false statements to the NOPD officers who were on the scene stating that he had witnessed the accident, and that the driver of the 2017 Freightliner tractor-trailer had been at fault. That, at approximately 1:58 p.m., "Attorney A" called Mr. Labeaud, and at approximately 3:06 p.m. and 3:32 p.m., Mr. Labeaud called "Attorney A". The purpose of these calls was to inform "Attorney A" that the accident had been successfully staged and to arrange a meeting with the passengers and "Attorney A". That "Attorney A" agreed to take the staged accident.

### 31(f).

That, following the June 6, 2017, staged accident, Mr. Labeaud, Mario Solomon, Lucinda Thomas, Judy Williams and Dashontae Young all met with "Attorney A" at a Raising Cane's restaurant on Chef Menteur Highway. At this meeting, "Attorney A" discussed representation of Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young, and all four individuals hired "Attorney A" to represent them. That, during this meeting, "Attorney A" also paid Mr. Labeaud $7,500.00 via check, for staging the June 6, 2017, accident and another accident. That, on or about June 7, 2017, Mr. Labeaud cashed the $7,500.00 check he received from "Attorney A". That, using funds that he received from "Attorney A," Mr. Labeaud then paid Mr. Solomon for serving as the "spotter".

1943417.v2

31(g).

That, on March 6, 2018, "Attorney A" filed a personal injury lawsuit on behalf of Lucinda Thomas, Mary Wade and Judy Williams against SRT, Covenant, IQS Insurance Risk Retention Group, Inc. ("IQS") – SRT and Covenant's insurer – seeking to obtain monetary damages in connection with the June 6, 2017, staged accident. The lawsuit was filed in the Civil District Court for the Parish of Orleans in the State of Louisiana and subsequently removed to the United States District Court for the Eastern District of Louisiana, assigned Civil Action Case Number 18-2472, and allotted to Section "A". That, the allegations in the lawsuit were false in that they did not contain information about how Mr. Labeaud was the driver of the Avalanche during the accident and how he intentionally caused the June 6, 2017, accident with the 2017 Freightliner tractor-trailer with "Attorney A's" knowledge.

31(h).

That, sometime between September, 2018, and April, 2019, "Attorney A" contacted Mr. Labeaud because "Attorney A" was concerned that the owner and insurer of the 2017 Freightliner tractor trailer (Southern Refrigerated Transport, Inc. ("SRT"), Covenant Transportation Group ("Covenant"), and IQS Insurance Risk Retention Group, Inc. ("IQS")) uncovered information revealing that Mary Wade and Mr. Labeaud had communicated by telephone on June 6, 2017, prior to the staged accident. That, this fact presented an issue because "Attorney A," Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young had been concealing the fact that Mr. Labeaud was more than a percipient witness in connection with the June 6, 2017, staged accident, and had been the driver in that accident. That, in an attempt to address the issue, "Attorney A" instructed Mr. Labeaud to contact Lucinda Thomas and Mary Wade and instruct them to "get their stories straight." That, during a subsequent meeting, "Attorney A" gave Mr. Labeaud an envelope

- 27 -

containing phone records, pleadings and deposition establishing that Lucinda Thomas and Mary

Wade had lied under oath in their depositions, which took place on September 13, 2018.

31(i).

That, in representing Lucinda Thomas, Mary Wade, Judy Williams and Dashontae Young,

"Attorney A" caused interstate wires to be transmitted to recover monetary damages for Lucinda

Thomas, Mary Wade, Judy Williams and Deshontae Young in connection with the staged accident.

That namely "Attorney A" negotiated a settlement on behalf of Dashontae Young prior to filing a

lawsuit. That, on approximately November 27, 2017, "Attorney A" settled Dashontae Young's

claim with Covent, the parent company of SRT, which operated the 2017 Freightliner tractor-

trailer involved in the June 6, 2017, staged accident. That, in connection with that settlement, after

November 27, 2017, "Attorney A" deposited a $20,000.00 settlement check for Dashontae Young

that "Attorney A" received for settling her claim. That, in effectuating the settlement, Dashontae

Young caused Covenant to issue from its Chase account check number 50047 dated November 17,

2017, in the amount of $20,000.00. That, "Attorney A" then deposited that check into an Iberia

account. That, in depositing the check into the Iberia account, "Attorney A" caused an electronic

wire communication to be sent from Louisiana to the Federal Reserve in Atlanta, Georgia.

### iii.    Mr. Labeaud's signed confession and "Factual Basis" regarding the conspiracy to commit fraud in the June 12 2017, staged accident:

31(j).

That, on June 12, 2017, Mr. Labeaud staged another accident with the assistance of Mr.

Solomon, who served as the "spotter," and Larry Williams, who recruited the passengers. That,

prior to the accident, Mr. Labeaud informed Larry Williams that "Attorney A" would handle

everything. That, on the morning of the accident, Larry Williams picked up Mr. Labeaud, Genetta

Isreal and another individual. That, prior to the accident, Mr. Labeaud exchanged several calls with

1943417.v2

Mr. Solomon to coordinate the accident. That, shortly before the accident, Mr. Labeaud called "Attorney A". Mr. Labeaud then drove a 2005 Chevrolet Trailblazer ("Trailblazer") with Larry Williams, Genetta Isreal and another individual as passengers to the Danziger Bridge and parked the Trailblazer in the far right-lane heading east on Chef Menteur Highway to locate an 18-wheeler tractor-trailer to collide with. That, at around the same time, Mr. Solomon waited in his Chevrolet Silverado pick-up truck on the Danziger Bridge immediately behind the Trailblazer operated by Mr. Labeaud. That, at approximately 11:30 a.m., Mr. Labeaud located and intentionally collided with a 2015 Peterbilt tractor-trailer owned by Southeastern Motor Freight, Inc. driving east on Chef Menteur Highway.

### 31(k).

That, immediately after the accident, Mr. Labeaud exited the Trailblazer, instructed Larry Williams to get behind the wheel of the Trailblazer, and left the scene. That, at 11:47 a.m., Mr. Labeaud called Mr. Solomon, who then picked up Mr. Labeaud after Mr. Labeaud fled from the Trailblazer on foot. That, when the NOPD arrived at the scene, Mr. Williams falsely reported that he had been the driver of the Trailblazer and that the tractor-trailer had struck his vehicle.

### 31(l).

That, after the accident, Mr. Labeaud contacted "Attorney A" and arranged a meeting at "Attorney A's" office. That, Mr. Labeaud, Larry Williams, Genetta Isreal and another individual went to "Attorney A's" office in order to sign the necessary paperwork to retain "Attorney A" to represent Larry Williams, Genetta Isreal and another individual in connection with seeking monetary damages from the owner and insurer of the 2015 Peterbilt tractor-trailer in connection with the staged accident that had taken place on June 12, 2017. That, Larry Williams, Genetta Isreal and another individual all hired "Attorney A" to represent them. That, ultimately, on June

- 29 -

30, 2017, "Attorney A" paid Mr. Labeaud $5,000.00 for staging the June 12, 2017, accident and another accident. That Mr. Labeaud then gave a portion of that $5,000.00 to Mr. Solomon for his assistance with staging the accident.

### 31(m).

That, on June 12, 2018, "Attorney B," an attorney who worked with "Attorney A," filed a personal injury lawsuit on behalf of Larry Williams, Genetta Isreal and another individual against Southeastern Motor Freight, Inc. and its insurers, Hudson Insurance Company and Napa River Insurance Services ("Napa"), in the Civil District Court for the Parish of Orleans in the State of Louisiana. That, on June 27, 2018, an employee of Southeastern Motor Freight, Inc., in Jefferson, Louisiana, sent an email that traveled across state lines to an employee of Napa in Indianapolis, Indiana that attached the lawsuit. That furthermore, during the course of the lawsuit, "Attorney B" made a settlement demand attempting to resolve the case via email. That, on December 20, 2018, Larry Williams and Genetta Isreal provided false testimony in their respective depositions taken in conjunction with the lawsuit filed by "Attorney B".

### 31(n).

That Mr. Labeaud conspired to commit wire fraud by agreeing with "Attorney A" and others to cause staged accidents with 18-wheeler tractor-trailers and that Mr. Labeaud received payment from "Attorney A" and others for his role in staging accidents for passengers who would subsequently become clients of "Attorney A" and other attorneys. That furthermore, Mr. Labeaud knew that his co-conspirators – the passengers in these staged accidents and the attorneys representing them – would seek to obtain monetary damages frim the owners and insurers of those 18-wheeler tractor-trailers. That, Mr. Labeaud knew that these accidents were premised on falsehoods because they were staged. Moreover, Mr. Labeaud's co-conspirators caused the use of

- 30 -

interstate wire communications to facilitate their recovery with these staged accidents.

**G.** **Southeastern Motor Freight, Inc., was a victim of a racketeering enterprise and scheme existing between Mr. Keating, Ms. Nugent, Nugent Keating law firm, Mr. Labeaud and Mr. Solomon to conspire to stage multiple accidents involving tractor trailers for the purpose of defrauding the owner of the tractor trailer and its insurer in a bodily injury claim arising out of the staged accident, and to conspire to commit wire fraud in connection with the staged accidents:**

32.

Based upon its involvement as a Defendant in "the Larry Williams lawsuit," Southeastern shows, alleges and avers herein that the individual referenced in the above referenced indictments and confessions of "Factual Basis" for the guilty pleas as "Attorney A," is attorney D. Patrick Keating of the Nugent Keating Personal Injury Law Firm, LLC.

33.

Based upon its involvement as a Defendant in "the Larry Williams lawsuit," Southeastern shows, alleges and avers herein that the individual referenced in the above referenced indictments and confessions of "Factual Basis" for the guilty pleas as "Attorney B," is attorney Simone R. Nugent of the Nugent Keating Personal Injury Law Firm, LLC.

34.

At all times relevant to the claims set forth herein, Mr. Keating and Ms. Nugent were acting on behalf of and as agents for Nugent Keating Personal Injury Law Firm, LLC.

35.

Of the eight persons indicted arising out of the staged accidents of June 6, 2017, and June 12, 2017, all but one have plead guilty and admitted to their roles in the fraudulent scheme, and signed extensive confessions of "Factual Basis" detailing the conspiracy to commit wire fraud, along with the facts concerning the roles of "Attorney A"/D. Patrick Keating and "Attorney B"/Simone R. Nugent, in the fraudulent scheme. The only remaining indicted criminal defendant,

1943417.v2

Genetta Isreal, is currently scheduled for trial to begin on August 31, 2020, regarding the charges of conspiracy to commit fraud arising out of the staged accident of June 12, 2017.

36.

As set forth in the factual reasons above, there was a racketeering enterprise and scheme existing between Mr. Keating, Ms. Nugent, Nugent Keating law firm, Mr. Labeaud and Mr. Solomon to conspire to stage multiple accidents involving tractor trailers for the purpose of defrauding the owner of the tractor trailer and its insurer in a bodily injury claim arising out of the staged accident, and to conspire to commit wire fraud in connection with the staged accidents. In fact, the "slammer" and recruiter in the staged accidents, Mr. Labeaud, the "spotter" and get away driver in the staged accidents, Mr. Solomon, along with five (5) of the six (6) occupants of the vehicles involved in the two (2) of the staged accidents on June 6, 2017, and June 12, 2017, have all plead guilty to their roles in conspiracy to commit wire fraud in connection with these staged accidents, and have signed detailed statements/factual basis outlining their roles in the scheme.

37.

Southeastern Motor Freight, Inc., is a trucking company involved in interstate commerce. Southeastern Motor Freight, Inc. was a victim in the staged accident of June 12, 2017, arising out of the fraudulent scheme set forth herein, resulting in real and personal injury and damages to Southeastern Motor Freight, Inc., and brings the following causes of action and claims for damages against these Defendants.

1943417.v2

## IV. CAUSES OF ACTION

### A.  COUNT ONE – RICO 1962(c)

(Against All Defendants for Violation of Title 18, United States Code, Section 1962(c))

### 1.   THE ENTERPRISE:

38.

Plaintiff incorporates as though fully set forth herein, each and every allegation contained in paragraphs 1 through 37 above.

39.

Defendants herein, D. Patrick Keating, Damian Labeaud and Mario Solomon are an association in fact and "Enterprise" as that term is defined in Title 18, United States Code, Section 1961(4).

40.

The Enterprise has an identifiable structure, with each member fulfilling a specific role to carry out and facilitate its purpose as follows:

41.

Defendant, D. Patrick Keating, established, financed, owned, operated and/or participated in the management of law offices presenting the fraudulent claims at issue and/or in the providing of legal services to personal injury plaintiffs for the fraudulent claims at issue in furtherance of the Enterprise. This includes, but is not limited to: (a) recruitment of, conspiring with and paying Damian Labeaud to recruit individuals to knowingly participate in a scheme to stage at least forty (40) automobile accidents in the New Orleans area in an effort to defraud insurance and trucking companies, including the staged accidents of June 6, 2017 and June 12, 2017, (b) directing Damian

- 33 -

1943417 v2

Labeaud to change the locations of the staged accidents, to vary the number of passengers, to avoid talking to the police, and to avoid cameras, etc., to conceal their fraudulent activity and evade detection of the fraudulent scheme and Enterprise; (b) conspiring with and agreeing to act as the legal representative of and file personal injury claims and lawsuits on behalf of the individuals which they knew were involved in staged accidents, and knowingly presenting false and fraudulent claims on their behalf, (c) conspiring with the individuals involved in the staged accidents and directing their medical treatment at an inflated cost in order to maximize the fraudulent recovery of monies from the trucking company and/or insurance company, (d) conspiring with the individuals involved in the staged accidents and suborning these individuals to commit perjury in deposition testimony arising out of the staged accidents, (e) conspiring with the individuals involved in the staged accidents to commit, and actually committing wire fraud in furtherance of the fraudulent scheme and Enterprise, and (f) making monetary demands for settlement of fraudulent personal injury claims arising out of the staged accident, and (g) receiving monies in settlement of the fraudulent personal injury claims arising out of the staged accident.

42.

Defendant, Damian Labeaud, has established, financed, owned, operated and/or participated in the fraudulent claims at issue and in furtherance of the Enterprise. This includes, but is not limited to: (a) staging numerous accidents, including at least forty (40) staged accidents with tractor-trailers for attorney, D. Patrick Keating, and/or attorney Simone Nugent and/or the Nugent Keating Personal Injury Law Firm, LLC (hereinafter referred to as the Defendant Attorneys), including but not limited to the staged accidents at issue of June 6, 2017 and June 12, 2017, (b) conspiring with and receiving payment from the Defendant Attorneys to recruit individuals to knowingly participate in a scheme to stage at least forty (40) automobile accidents

1943417.v2

in the New Orleans area in an effort to defraud insurance and trucking companies, including the staged accidents of June 6, 2017 and June 12, 2017, (c) actively recruiting individuals to knowingly participate in the staged accidents, (d) acting as either the driver or "slammer" of the vehicle used in the staged accidents including the accidents at issue of June 6, 2017, and June 12, 2017, or, acting as the "spotter" or the person driving the getaway vehicle following the staged accident, (e) conspiring with, recruiting and paying other individuals, including Mario Solomon, to act as "spotter" in a staged accident, including the accidents at issue of June 6, 2017, and June 12, 2017, (f) directing the individuals who participated in the staged accidents to the Defendant Attorneys for representation of them in the fraudulent personal injury claims and lawsuits arising out of the staged accidents, (g) conspiring with the Defendant attorneys to change the locations of the staged accidents, to vary the number of passengers, to avoid talking to the police, and to avoid cameras, etc., to conceal their fraudulent activity and evade detection of the fraudulent scheme and Enterprise, (h) knowingly lying to law enforcement officers at the scene of the staged accidents in furtherance of the Enterprise and to deceive the law enforcement officers, (i) conspiring with the Defendant Attorneys and the individuals involved in the staged accidents and suborning these individuals to commit perjury in deposition testimony arising out of the staged accidents, (j) conspiring with the Defendant Attorneys and individuals involved in the staged accidents to commit wire fraud in furtherance of the fraudulent scheme and Enterprise, and (k) receiving monies and payments from the Defendant Attorneys in exchange for this services and participation in the fraudulent scheme and Enterprise.

43.

Defendant, Mario Solomon, has established, financed, owned, operated and/or participated in the fraudulent claims at issue and in furtherance of the Enterprise. This includes, but is not

- 35 -

limited to: (a) conspiring with Damian Labeaud and the Defendant Attorneys and participating in the staging of numerous accidents, including but not limited to the staged accidents at issue of June 6, 2017 and June 12, 2017, (b) conspiring with and receiving payment from Damian Labeaud to knowingly participate in a scheme to stage automobile accidents in the New Orleans area in an effort to defraud insurance and trucking companies, including the staged accidents of June 6, 2017 and June 12, 2017, (c) acting as the "spotter" or the person driving the getaway vehicle following the staged accidents including the accidents at issue of June 6, 2017, and June 12, 2017, (d) conspiring with and accepting payment from Damian Labeaud to act as "spotter" in a staged accident, including the accidents at issue of June 6, 2017, and June 12, 2017, (e) conspiring with Damian Labeaud and the individuals who participated in the staged accidents to knowingly help them participate in staged accidents for the purpose of the individuals making fraudulent personal injury claims and lawsuits arising out of the staged accidents, (f) conspiring with Damian Labeaud to change the locations of the staged accidents, to vary the number of passengers, to avoid talking to the police, and to avoid cameras, etc., to conceal their fraudulent activity and evade detection of the fraudulent scheme and Enterprise, (g) knowingly lying to law enforcement officers at the scene of the staged accidents in furtherance of the Enterprise and to deceive the law enforcement officers, (h) conspiring with Damian Labeaud, the Defendant Attorneys and individuals involved in the staged accidents to commit wire fraud in furtherance of the fraudulent scheme and Enterprise, and (i) receiving monies and payments from Damian Labeaud in exchange for this services and participation in the fraudulent scheme and Enterprise.

44.

The Enterprise engages in, and its activities affect, interstate commerce.

1943417.v2

45.

The Defendants herein have been employed by and/or associated with the Enterprise, have participated in the management and operation of the Enterprise, and have deliberately caused fraud to be perpetrated upon Plaintiff and other 18-wheeler trucking companies, drivers and insurers through the scheme of staging numerous automobile accidents throughout the New Orleans area for the purpose of pursuing fraudulent personal injury claims against the victims of the fraud, which includes the staged accident of June 12, 2017, involving Plaintiff.

**2.   THE PURPOSE OF THE SCHEME:**

46.

The purpose of the scheme was to illicitly and illegally enrich the Defendants at the expense of Plaintiff, Plaintiff's insurers and other similarly situated 18-wheeler trucking companies, drivers and their insurers which were the victims of the numerous staged automobile accidents.

47.

As set forth at length in paragraphs 1 through 46 and incorporated herein, which includes but it not limited to the signed confessions and "Factual Basis" of the guilty pleas of two of the three individual Defendants herein, the scheme was to create and pursue fraudulent bodily injury claims against 18-wheeler trucking companies, drivers and their insurers.

**3.   THE PATTERN OF RACKETERING ACTIVITIES:**

48.

Defendants have knowingly conducted and/or participated, directly and indirectly, in the conduct of the affairs of the above described Enterprise through a "pattern of racketeering activity" as defined by Title 18, United States Code, Section 1961(5).

1943417.v2

49.

Such racketeering activity consists of repeated violations of the Federal Conspiracy to Commit Wire Fraud statute, Title 18, United States Code, Section 371, arising out of the staged accidents at issue, as set forth at length in paragraphs 1 through 47 above. Moreover, as set forth herein, five (5) of the six (6) occupants of the two vehicles used in the staged accidents of June 6, 2017, and June 12, 2017, have plead guilty to Conspiracy to Commit Wire Fraud, along with Defendants herein, Damian Labeaud and Mario Solomon, who were the "slammer" and "spotter" respectively in these staged accidents.

50.

The racketeering activity also consists of repeated violations of the Federal Wire Fraud Statute, in violation of Title 18, United States Code, Section 1343, arising out of staged accidents at issue, as set forth at length in paragraphs 1 through 47 above, based upon the repeated interstate telephone communications, email communications, and transfer of funds by wire and check, which crossed state lines.

51.

These predicate acts are part of a scheme, and are not isolated events. Furthermore, the Defendants' pattern of racketeering activity has involved at least forty (40) staged accidents involving multiple occupants in each accident within this specific Enterprise alone as confessed to by Damian Labeaud, is potentially ongoing, and amounts to or poses a threat of continued criminal activity.

**4.   INJURY TO PLAINTIFF:**

52.

As a direct and proximate result of the Defendants' conduct, Plaintiff herein, Southeastern

1943417.v2

Motor Freight, Inc., was injured by paying sums of money in the defense of the fraudulent bodily injury claims as a direct result of the pattern of racketeering activity, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter. This injury is set forth more fully in paragraphs 97 through 100 below.

53.

By reason of their injury, Plaintiff is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to Title 18, United States Code, Section 1964(c).

## B.  COUNT TWO – RICO 1962(d)

(Against All Defendants for Violation of Title 18, United States Code, Section 1962(d))

54.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 53 above.

55.

Since at least 2017, Defendants willfully combined, conspired and agreed with one another and with others to violate Title 18, United States Code, Section 1962(c), that is, to conduct and/or participate, directly or indirectly, in the affairs of the Enterprise, the activities of which were conducted through a pattern of racketeering activities, in violation of U.S.C. Section 1962(d).

56.

The object of this conspiracy was to defraud Plaintiff, Plaintiff's insurers and other similarly situated 18-wheeler trucking companies, drivers and their insurers which were the victims of the numerous staged automobile accidents.

- 39 -

57.

As a direct and proximate result of the Defendants' conduct as set forth herein, Plaintiff herein, Southeastern Motor Freight, Inc., was injured by paying sums of money in the defense of the fraudulent bodily injury claims as a direct result of the pattern of racketeering activity, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter. This injury is set forth more fully in paragraphs 97 through 100 below.

58.

By reason of their injury, Plaintiff is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to Title 18, United States Code, Section 1964(c).

## C. **COUNT THREE – STATE LAW FRAUD**

(Against All Defendants for Louisiana State Law Fraud

in accordance with La. Civ. Code Art. 1953 *et seq*)

59.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 58 above.

60.

Since at least 2017, Defendants, personally or through their agents acting at their direction (such as the individual occupants of the vehicles voluntarily participating in the staged accidents for the purpose of making fraudulent bodily injury claims), have made or caused to be made false and fraudulent material misrepresentations of fact to Plaintiff (and other similarly situated entities) with the intention of obtaining an unjust advantage in the personal injury lawsuit against Plaintiff

- 40 -

(and other similarly situated entities) and to cause a pecuniary loss to Plaintiff through settlement or judgment against Plaintiff in the personal injury lawsuit against Plaintiff. Specifically, Defendants, personally or through their agents, have made false and misleading statements and representations concerning how the "accident" at issue occurred, that the accident was caused by the operator of the 18-wheeler while intentionally withholding the information that the accident was intentionally caused and staged by Defendants, in addition to the numerous other fraudulent material misrepresentations cited herein in paragraphs 1 through 58 which are incorporated as though fully set forth herein, and those which will be proven at the trial on this matter. These material misrepresentations and suppression of the truth of Defendants are in violation of the provisions of La. Civ. Code art. 1953, *et seq*.

61.

These misrepresentations and suppression of the truth were conveyed to Plaintiff through documents which include, but are not limited to, the police report issued arising out of this accident, representation letters issued by the Defendant Attorneys in the underlying lawsuits, attorney demand letters issued in the underlying lawsuits matter, discovery responses issued in the underlying lawsuits, deposition testimony given in the underlying lawsuits, and medical and billing records issued in the underlying lawsuits.

62.

At the time the statements and representations were made, Defendants in this matter were aware of the falsity of the misrepresentations.

63.

Defendants in this matter made the misrepresentations with the intent to deceive Plaintiff, and with the intent that Plaintiff would act on the misrepresentations by paying Defendants sums

1943417.v2

of money in settlement of claims.

64.

As a direct and proximate result of the Defendants' fraudulent conduct and misrepresentations as set forth herein, Plaintiff herein, Southeastern Motor Freight, Inc., was injured by paying sums of money in the defense of the fraudulent bodily injury claims as a direct result of the intentional fraudulent misrepresentation of Defendants herein, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter. This injury is set forth more fully in paragraphs 97 through 100 below.

65.

Plaintiff herein is also entitled to attorneys' fees and costs arising from the damages suffered by Defendants' intentional fraudulent misrepresentations.

66.

Plaintiff specifically pleads herein the doctrine of *contra non valentum* regarding the Louisiana State Court Fraud claims herein. As set forth herein within paragraphs 1 through 38 above, Plaintiff had insufficient evidence to support the involvement of Defendants in this fraudulent scheme, particularly the involvement of the Attorney Defendants, until at the earliest October, 2019, when the Federal Prosecutor issued an indictment in October, 2019, alleging their involvement. Moreover, Plaintiff did not have justifiable evidence to bring these claims against Defendants, particularly the involvement of the Attorney Defendants, until the guilty plea of Damian Labeaud and the confession and "Factual Basis" signed by Damian Labeaud in August, 2020, wherein Mr. Labeaud admitted to the fraudulent scheme and set forth the significant factual basis for the same of how the fraudulent scheme, which Plaintiff was previously unaware. Plaintiff

- 42 -

was unaware of the role of the Defendants, and specifically the Attorney Defendants, as a direct result of the Defendants intentional concealment, misrepresentation, fraud and ill practices of the same. Plaintiff specifically pleads and avers that the prescriptive period regarding the Louisiana State Court Fraud claims was suspended pursuant to the doctrine of *contra non valentum*.

### D.  COUNT FOUR – STATE LAW CONSPIRACY TO COMMIT INTENTIONAL STAGED ACCIDENTS AND FRAUD

(Against All Defendants for Louisiana State Law Conspiracy to Commit Intentional Staged Accidents and Fraud Claims in accordance with La. Civ. Code Art. 2324 *et seq*.)

67.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 66 above.

68.

Since at least 2017, Defendants, personally or through their agents acting at their direction (such as the individual occupants of the vehicles voluntarily participating in the staged accidents for the purpose of making fraudulent bodily injury claims), have willfully combined, conspired, colluded and agreed with each other and others to commit an intentional and willful acts of causing an intentionally staged automobile collision with Plaintiff (and other similarly situated entities), and have willfully combined, conspired, colluded and agreed with each other and others to intentionally and willfully defraud Plaintiff (and other similarly situated entities) through bringing fraudulent personal injury claims arising from these intentionally staged and fraudulent accidents. Specifically, Defendants have conspired to intentionally cause a staged automobile accident on June 12, 2017 involving Plaintiff (and other staged accidents), have conspired to make false and

fraudulent material misrepresentations of fact to Plaintiff (and other similarly situated entities) with the intention of obtaining an unjust advantage in the personal injury lawsuit against Plaintiff (and other similarly situated entities) and to cause a pecuniary loss to Plaintiff through settlement or judgment against Plaintiff in the personal injury lawsuit against Plaintiff, in addition to the numerous other intentional and willful acts and fraudulent material misrepresentations arising from the conspiracy among the Defendants which is cited herein in paragraphs 1 through 66 which are incorporated as though fully set forth herein, and those which will be proven at the trial on this matter. These conspiracies among the Defendants to commit these intentional and willful acts, and conspiracy to commit material misrepresentations and suppression of the truth of Defendants, are in violation of the provisions of La. Civ. Code art. 2324, *et seq*.

69.

Defendants in this matter conspired with one another in this matter to commit the intentional and willful acts set forth herein against Plaintiff (and other similarly situated entities). In accordance with La. Civ. Code art. 2324, *et seq*., Defendants are liable, *in solido*, for the damage caused by intentional and willful acts set forth herein to Plaintiff.

70.

As a direct and proximate result of the Defendants' conspiracy to commit the fraudulent conduct and misrepresentations as set forth herein, Plaintiff herein, Southeastern Motor Freight, Inc., was injured by paying sums of money in the defense of the fraudulent bodily injury claims as a direct result of the intentional fraudulent misrepresentation of Defendants herein, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter. This injury is set forth more fully in paragraphs 97 through 100 below.

1943417.v2

71.

Plaintiff herein is also entitled to attorneys' fees and costs arising from the damages suffered by Defendants' conspiracy to commit the intentional fraudulent conduct and misrepresentations.

72.

Plaintiff specifically pleads herein the doctrine of *contra non valentum* regarding the Louisiana State Court Conspiracy to Commit Intentional Staged Accidents and Fraud claims herein. As set forth herein within paragraphs 1 through 38 above, Plaintiff had insufficient evidence to support the involvement of Defendants in this conspiracy and fraudulent scheme, particularly the involvement of the Attorney Defendants, until at the earliest October, 2019, when the Federal Prosecutor issued an indictment in October, 2019, alleging their involvement. Moreover, Plaintiff did not have justifiable evidence to bring these claims against Defendants, particularly the involvement of the Attorney Defendants, until the guilty plea of Damian Labeaud and the confession and "Factual Basis" signed by Damian Labeaud in August, 2020, wherein Mr. Labeaud admitted to the fraudulent scheme and set forth the significant factual basis for the same of how the fraudulent scheme, which Plaintiff was previously unaware. Plaintiff was unaware of the role of the Defendants, and specifically the Attorney Defendants, as a direct result of the Defendants intentional concealment, misrepresentation, fraud and ill practices of the same. Plaintiff specifically pleads and avers that the prescriptive period regarding the Louisiana State Court Fraud claims was suspended pursuant to the doctrine of *contra non valentum*.

1943417.v2

### E.  **COUNT FIVE – LOUISIANA RACKETEERING ACT – La. R.S. 15:1353(A)**

(Against All Defendants for violation of the Louisiana Racketeering Act

in accordance with La. R.S. 15:1353(A))

73.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 72 above.

74.

The above-identified Defendants knowingly and intentionally received proceeds directly, or indirectly, through a pattern of racketeering activity in Louisiana as set forth above, to use or invest, directly or indirectly some or all of the proceed derived from the pattern of racketeering activity to acquire an interest in property or to establish or operate an Enterprise as set forth above in violation of the provisions of La. R.S. 15:1353(A).

75.

As a direct and proximate result of the Defendants' intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(A), as set forth above, Plaintiff was injured by paying sums of money in the defense of the fraudulent bodily injury claims, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter, including treble damages and punitive damages, for which Defendants are liable, *in solido*. This injury is set forth more fully in paragraphs 97 through 100 below.

76.

In accordance with the provisions of La. R.S. 15:1356 *et seq*., Plaintiff herein is also

- 46 -

entitled to recover treble damages of three times the actual damages sustained or ten thousand dollars, whichever is greater, arising from the Defendants' intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(A) as set forth above, in addition to attorneys' fees and costs incurred in the investigation and litigation of the same.

**F.  COUNT SIX – LOUISIANA RACKETEERING ACT – La. R.S. 15:1353(B)**

(Against All Defendants for violation of the Louisiana Racketeering Act

in accordance with La. R.S. 15:1353(B))

77.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 76 above.

78.

The Defendants have knowingly acquired or maintained, directly or indirectly, an interest in or control of an Enterprise through a pattern of racketeering activity in the State of Louisiana as set forth above in violation of the provisions of La. R.S. 15:1353(B).

79.

As a direct and proximate result of the Defendants' intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(B) as set forth above, Plaintiff was injured by paying sums of money in the defense of the fraudulent bodily injury claims, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter, including treble damages and punitive damages, for which

- 47 -

Defendants are liable, *in solido*. This injury is set forth more fully in paragraphs 97 through 100 below.

80.

In accordance with the provisions of La. R.S. 15:1356 *et seq.*, Plaintiff herein is also entitled to recover treble damages of three times the actual damages sustained or ten thousand dollars, whichever is greater, arising from the Defendants' intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(B) as set forth above, in addition to attorneys' fees and costs incurred in the investigation and litigation of the same.

### G.  COUNT SEVEN – LOUISIANA RACKETEERING ACT – La. R.S. 15:1353(C)

(Against All Defendants for violation of the Louisiana Racketeering Act

in accordance with La. R.S. 15:1353(C))

81.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 80 above.

82.

The Defendants, individually and/or collectively, are associated with an Enterprise as set forth above, and have knowingly conducted or participated, directly or indirectly, in the activities of that Enterprise through a pattern of racketeering activity in violation of the provisions of La. R.S. 15:1353(C).

83.

As a direct and proximate result of the Defendants' intentional, willful and wanton actions

- 48 -

while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(C) as set forth above, Plaintiff was injured by paying sums of money in the defense of the fraudulent bodily injury claims, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter, including treble damages and punitive damages, for which Defendants are liable, *in solido*. This injury is set forth more fully in paragraphs 97 through 100 below.

84.

In accordance with the provisions of La. R.S. 15:1356 *et seq.*, Plaintiff herein is also entitled to recover treble damages of three times the actual damages sustained or ten thousand dollars, whichever is greater, arising from the Defendants' intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(C) as set forth above, in addition to attorneys' fees and costs incurred in the investigation and litigation of the same.

**H. <u>COUNT EIGHT – CONSPIRACY TO VIOLATE THE LOUISIANA RACKETEERING ACT – La. R.S. 15:1353(A) and (D)</u>**

(Against All Defendants for violation of the Louisiana Racketeering Act

in accordance with La. R.S. 15:1353(D) by conspiracy to violate La. R.S. 15:1353(A))

85.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 84 above.

- 49 -

86.

The Defendants knowingly and intentionally have conspired with one another and attempted to receive proceeds directly, or indirectly, through a pattern of racketeering activity in Louisiana as set forth above, to use or invest, directly or indirectly some or all of the proceed derived from the pattern of racketeering activity to acquire an interest in property or to establish or operate an Enterprise as set forth above in violation of the provisions of La. R.S. 15:1353 (D), by conspiracy to violate the provisions of La. R.S. 15:1353(A).

87.

As a direct and proximate result of the Defendants' intentional, willful and wanton actions and conspiracy to commit these intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(A) and (D) as set forth above, Plaintiff was injured by paying sums of money in the defense of the fraudulent bodily injury claims, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter, including treble damages and punitive damages, for which Defendants are liable, *in solido*. This injury is set forth more fully in paragraphs 97 through 100 below.

88.

In accordance with the provisions of La. R.S. 15:1356 *et seq.*, Plaintiff herein is also entitled to recover treble damages of three times the actual damages sustained or ten thousand dollars, whichever is greater, arising from the Defendants' intentional, willful and wanton actions and conspiracy to commit these intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(A) and (D) as set forth above, in addition to attorneys' fees and costs incurred in the investigation and litigation of the

1943417.v2

same.

## I.  COUNT NINE – CONSPIRACY TO VIOLATE THE LOUISIANA RACKETEERING ACT – La. R.S. 15:1353(B) and (D)

(Against All Defendants for violation of the Louisiana Racketeering Act

in accordance with La. R.S. 15:1353(D) by conspiracy to violate La. R.S. 15:1353(B))

89.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 88 above.

90.

The Defendants have knowingly conspired with one another and attempted to acquire or maintain, directly or indirectly, an interest in or control of an Enterprise through a pattern of racketeering activity in the State of Louisiana as set forth above in violation of the provisions of La. R.S. 15:1353(D), by conspiracy to violate the provisions of La. R.S. 15:1353(B).

91.

As a direct and proximate result of the Defendants' intentional, willful and wanton actions and conspiracy to commit these intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353 (B) and (D) as set forth above, Plaintiff was injured by paying sums of money in the defense of the fraudulent bodily injury claims, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter, including treble damages and punitive damages, for which Defendants are liable, *in solido*. This injury is set forth more fully in paragraphs 97 through 100 below.

1943417.v2

92.

In accordance with the provisions of La. R.S. 15:1356 *et seq*., Plaintiff herein is also entitled to recover treble damages of three times the actual damages sustained or ten thousand dollars, whichever is greater, arising from the Defendants' intentional, willful and wanton actions and conspiracy to commit these intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(B) and (D) as set forth above, in addition to attorneys' fees and costs incurred in the investigation and litigation of the same.

## J.  COUNT TEN – CONSPIRACY TO VIOLATE THE LOUISIANA RACKETEERING ACT – La. R.S. 15:1353(C) and (D)

(Against All Defendants for violation of the Louisiana Racketeering Act

in accordance with La. R.S. 15:1353(D) by conspiracy to violate La. R.S. 15:1353(C))

93.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 92 above.

94.

The Defendants, individually and/or collectively, are associated with an Enterprise as set forth above, and have knowingly conspired with one another and attempted to conduct or participate, directly or indirectly, in the activities of that Enterprise through a pattern of racketeering activity in violation of the provisions of La. R.S. 15:1353(D), by conspiracy to violate the provisions of La. R.S. 15:1353(C).

1943417.v2

95.

As a direct and proximate result of the Defendants' intentional, willful and wanton actions and conspiracy to commit these intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(C) and (D) as set forth above, Plaintiff was injured by paying sums of money in the defense of the fraudulent bodily injury claims, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter, including treble damages and punitive damages, for which Defendants are liable, *in solido*. This injury is set forth more fully in paragraphs 97 through 100 below.

96.

In accordance with the provisions of La. R.S. 15:1356 *et seq.*, Plaintiff herein is also entitled to recover treble damages of three times the actual damages sustained or ten thousand dollars, whichever is greater, arising from the Defendants' intentional, willful and wanton actions and conspiracy to commit these intentional, willful and wanton actions while engaged in the racketeering activities in violation of the provisions of La. R.S. 15:1353(C) and (D) as set forth above, in addition to attorneys' fees and costs incurred in the investigation and litigation of the same.

## V. DAMAGES

97.

Plaintiff incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 96 above.

98.

Plaintiff has been damaged by Defendants' practices outlined in this Complaint. These

1943417.v2

include, but are not limited to, Defendants' intentionally causing and conspiring to cause a staged accident involving the use of a motor vehicle to crash into a tractor-trailer owned by Plaintiff and operated by Plaintiff's employee on June 12, 2017, for the purpose of fraudulently manufacturing bodily injury claims on behalf of the four occupants of the vehicle who were also knowingly complicit in the fraudulently staged accident and Enterprise, and directing the medical treatment of the occupants at inflated costs to further the Enterprise to attempt to increase the fraudulent damages.

99.

Plaintiff herein was forced to pay substantial attorney's fees, costs and expenses in the investigation and defense of the lawsuit filed against Plaintiff and Plaintiff's employee driver by Defendants on behalf of the three occupants of the staged accident of June 12, 2017, in addition to damage to its reputation, lost income, internal expenses, increase in insurance premiums, and other actual and pecuniary injury and damages which will be shown at the trial on this matter, including treble damages and punitive damages as allowed by law, all for which Defendants are liable herein, *in solido*.

100.

Plaintiff is also entitled herein to a damage award against Defendants for all attorney's fees, costs and expenses incurred in investigating and litigating these instant claims against Defendants, for which Defendants are liable, *in solido*.

## VI. JURY DEMAND

101.

Trial by jury is requested on all issues triable by jury.

1943417.v2

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff, Southeastern Motor Freight, Inc., respectfully requests that upon final trial of this cause, the Court enter a judgment against Defendants, *in solido*, as follows:

(1)     Upon the First Claim for Relief, all damages resulting from Defendants' violation of Title 18, United States Code, Section 1962(c), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to Title 18, United States Code, Section 1964(c);

(2)     Upon the Second Claim for Relief, all damages resulting from Defendants' violation of Title 18, United States Code, Section 1962(d), by conspiracy to violate Title 18, United States Code, Section 1962(c), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to Title 18, United States Code, Section 1964(c);

(3)     Upon the Third Claim for Relief, all damages resulting from Defendants' fraudulent conduct including but not to damages resulting from Defendants' violation of La. Civ. Code art. 1953, *et seq.*, including prejudgment interest, costs, expenses, and attorneys' fees;

(4)     Upon the Fourth Claim for Relief, all damages resulting from Defendants' conspiracy to commit intentional staged accidents and fraud claims, including but not to damages resulting from Defendants' violation of La. Civ. Code art. 2324, *et seq.*, including prejudgment interest, costs, expenses, and attorneys' fees;

(5)     Upon the Fifth Claim for Relief, all damages resulting from Defendants' violation of La. R.S. 15:1353(A), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to La. R.S. 15:1356 *et seq.*;

(6)     Upon the Sixth Claim for Relief, all damages resulting from Defendants' violation of La. R.S. 15:1353(B), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to La. R.S. 15:1356 *et seq.*;

(7)     Upon the Seventh Claim for Relief, all damages resulting from Defendants' violation of La. R.S. 15:1353(C), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to La. R.S. 15:1356 *et seq.*;

(8)     Upon the Eighth Claim for Relief, all damages resulting from Defendants' violation of La. R.S. 15:1353(D), by conspiracy to violate La. R.S. 15:1353(A), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to La. R.S. 15:1356 *et seq.*;

1943417.v2

(9)   Upon the Ninth Claim for Relief, all damages resulting from Defendants' violation of La. R.S. 15:1353(D), by conspiracy to violate La. R.S. 15:1353(B), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to La. R.S. 15:1356 *et seq.*; and

(10)   Upon the Tenth Claim for Relief, all damages resulting from Defendants' violation of La. R.S. 15:1353(D), by conspiracy to violate La. R.S. 15:1353(C), including prejudgment interest, costs, expenses, and attorneys' fees, the sum trebled pursuant to La. R.S. 15:1356 *et seq*.

Respectfully submitted:
BREAZEALE, SACHSE & WILSON, L.L.P.
One American Place, 23rd Floor
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone:  225-387-4000
Fax:  225-381-8029
E: doug.williams@bswllp.com;
chris.mason@bswllp.com

*/s/ Douglas K. Williams*
Douglas K. Williams, T.A., La Bar Roll No. 2187
Christopher A. Mason, La Bar Roll No. 29328
Kelsey A. Clark, La. Bar Roll No. 36413
Katherine M. Cook, La. Bar Roll No. 37640
*Attorneys for Plaintiff, Southeastern Motor Freight, Inc.*

1943417.v2